The case is taken under advisement, and Mr. Palmer, thanks to your students as well. I think you had just one student on this case, so thanks to your student as well. All right, we'll move to the next case this morning. United States v. Davis Robert Davis, different Davis. Last one was Sean. And Mr. Cohn, whenever you're ready. Thank you, Your Honor. Good morning. May it please the court, counsel for the government. Your Honor, this case, Mr. Davis' case, comes before the court after a conditional plea of guilty, wherein Mr. Davis received a sentence of 90 months for possession with intent to distribute crack cocaine. However, as part of his guilty plea, he reserved the right to appeal an adverse ruling by the district court judge, wherein Mr. Davis had challenged the seizure of the crack cocaine, some U.S. currency, and a small amount of methamphetamine that was seized by the City of Marion detectives. This case goes back to December 2018, and at the time, Mr. Davis was driving a car of a friend of his, Travis Marshall, and Mr. Davis was going to pick up a gentleman by the name of Najeem Kareem. May I stop you please for just a moment, because we really do know the facts here, but I just have been thinking about this so much because Mr. Davis argues that the officers didn't know that the windows were overly tinted, because they hadn't, you know, used a meter to assess the windows. But here's what I was wondering. Why aren't they allowed to pull a car over to check a tint with a meter if they have even the most, even if they have, let's say, a reasonable suspicion that the tint violates the law? Is there any evidence that a meter can be employed on a moving vehicle? I don't believe so, Your Honor. I'm not aware of any way that that can be done. I know the district, they did do a measurement during the suppression hearing. The district judge did do that. But that was done on a parked car. I don't think, to my knowledge, I'm not 100% sure, to my knowledge, it cannot be done on a moving car. Right. Exactly the same concern Judge Rovner is expressing. The initial stop is going to be because the officer, given his experience and the rest, is going to see a car and think, that looks as though it violates the state law standard. And that's when the meter comes out. I mean, you would never have enough to stop a car if you can't use a machine that measures the car's windows while it's in motion. Yes, Your Honor. And one of the other things Mr. Davis did argue in his brief was he believes, we believe, that even before that there was no illegal activity occurring. Mr. Korine was just waiting, he got off work, was waiting for a ride. The detectives did not, they were in a plain vehicle, unmarked vehicle, unmarked car. They did not have reason to even initiate the pursuit or to follow him. They didn't do anything to anyone, though, until they pulled the car over for the tinted windows and obstructed brake light, right? That's true. They just, they followed him throughout Marion, but nonetheless they were investigating. That's a tough standard that you're proposing if the police see somebody standing around and they follow a car but they never pull it over, they go about their business, you know, they haven't really injured that person. That's true, Your Honor, but ultimately they did end up... Well, so our focus is on the reason. Yes, ma'am. And then one other thing I might mention, it's not a misnomer, but this isn't a typical stop where the sirens go off and they pull somebody to the side of the road. Mr. Davis and Mr. Kareem had actually arrived at their destination and were, you know, and something was said during the hearing about Mr. Davis getting out of the car, or the officers raised that, well, he got to where he was going. So that's why he was getting out of the car and the detectives kind of, I don't know, kind of pinned him in, but, you know, pulled up next to him. So he certainly wasn't free to leave. So his first argument is that they didn't have any reason for the initial pursuit, going back to when they observed Mr. Kareem. And the second argument... Well, the equipment violation is alone enough, the tint violation. They could have stopped him at any point along that journey. They were following him to look for other violations, which is perfectly legitimate. Yes, Your Honor, and ultimately there were no, and it's interesting to note that there were no citations ever given for the tinted windows, but that... Doesn't matter. And that's what Judge Gilbert had said in his ruling, but also, Your Honor, we argue that the stop was prolonged unnecessarily once it happened because Mr. Davis was asked for insurance. He was unable to provide proof of insurance for the car that he was in. He did have some proof of insurance for another car that was owned by Mr. Marshall. That's why I didn't see this as a prolonging case, even though there's some talk about the dog in the background. They never resolve the insurance issue, and that's well understood to be a legitimate part of the police initial inquiry. Your Honor, I would assert that I agree with the court that they can ask for insurance, but my experience with clients is if they don't come up with insurance right away when the officer asks for it, they get a ticket and they should be able to go on their way, that that shouldn't necessarily be a reason to prolong a stop while somebody is digging for an insurance card or saying that they do believe that they have insurance. Usually, here's your ticket for the insurance, the tinted windows, have a good evening. But, you know, would you say it's the same case if the police stop you and they say, you know, license and insurance, and you give them your driver's license, but you say oops, you know, I don't have the insurance card with me. It seems like that's a pretty straightforward maybe just write the ticket and go, but this was more complicated. This was a proffered insurance card that's for an entirely different car, and they're also having problems figuring out how the VIN of this car, because it's silver versus black, and they have things that are disturbing to them that they're trying to resolve. So it seems like that's different from just saying I don't have my insurance card with me. I agree the car had been painted and they were looking into that. My client had already asked for the dog to come before they started doing all that. But then they find out the dog can't come. And they did find out the dog was not available. They thought my client was acting nervous. They always think that. My assertion or argument would be that the subsequent investigation for the insurance, the VIN number, and all those things that occurred thereafter were really just means of prolonging the stop, because they wouldn't be here if it wasn't, but they were right. There was something wrong afoot, but that's why they used those means to prolong the stop. So that was our argument on that. So we're asking that the court suppress the evidence that was seized based on those arguments. Thank you. Thank you. Mr. Sanders. May it please the Court. Counsel. My name is David Sanders and I represent the United States on appeal. The District Court correctly denied the defendant's motion to suppress. As the Court knows, the reasonable suspicion is a minimal standard here. It permits a brief investigation upon an objective and particularized suspicion. Here, deputies noticed the tint. The vehicle had illegal tint on its windows and on its brake lights. They later learned that the register owner had a suspended driver's license, and there were no facts here negating that the reasonable inference that the register owner was likely the driver. As such, the traffic stop was constitutional based on those three independent justifications. As to the defendant's second argument about the prolonged stop, in Grant's, it was only eight minutes. The traffic stop, the mission of the initial traffic stop never ended because the situation changed, and it changed drastically. And that's why it went from an ordinary traffic stop to now to a drug arrest. Accordingly, the District Court properly denied the motion suppressed. I would like to address a couple of the questions. There is a meter, Judge Wovner, that was deployed and used later on that the tint is enough to pull this car over with. You're not quite saying that. I mean, they have to have the reasonable suspicion or probable cause ex ante. They can't say, well, it turned out I was right, and so therefore it's okay to pull the car over. So you have to have something. And actually, the District Court, having viewed the car, says, yeah, this really looks dark. It was well within the range of reasonable suspicion, or maybe more, for the officers to pull the car over and initiate an investigation of the tint. But you can't say that the after-the-fact corroboration is what justifies the stop. Correct, Your Honor. And they had that reasonable suspicion based on their observation of being 200 feet away from this vehicle and falling it multiple times, noticing that the taillights were not visible from 200 feet and less than 500, what is required by statute. Unless there's any further questions, the government rests on its briefs and urge affirmance. Thank you. All right. Thank you very much. Mr. Cohn. Anything else? No, Your Honor. If there's no further questions, I don't have any. Thank you. All right. Thank you very much. Thanks to both counsel. The case is taken under advisement.